# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENNIS RAY ALLEN,<br><br>     Plaintiff,<br><br>v.<br><br>1. KAY LANG, in her individual capacity and in her official capacity as Mayor of Boynton,<br>2. WILLIE G. HOPKINS, in his individual capacity and in his official capacity as an employee of Boynton,<br>3. CANDACE LANG, in her individual capacity and in her official capacity as an employee of Boynton, and<br>4. TOWN OF BOYNTON,<br><br>     Defendants. | Case No. CIV-16-296-RAW |

## __ORDER__[1]

Before the court are the motions for summary judgment filed by Kay Lang [Docket No. 120], Willie Hopkins [Docket No. 122],[2] and the Town of Boynton [Docket No. 123]. Willie Hopkins and the Town of Boynton joined Kay Lang's motion. Also before the court is Candace Lang's *pro se* motion, which the court construes as a motion for summary judgment [Docket No. 110].[3]

---

[1]    For clarity and consistency herein, when the court cites to the record, it uses the pagination assigned by CM/ECF.

[2]    The court hereby grants Mr. Hopkins' request to withdraw Docket No. 121 [Docket No. 124].

[3]    Candace Lang has previously filed two untitled motions requesting that her name be removed from this lawsuit. Both motions were construed as motions to dismiss and denied. Although her latest untitled motion is similar to her first two and was docketed as another motion to dismiss, the court construes it as a motion for summary judgment. The court construes liberally the pleadings of all *pro se* litigants. Hall v. Bellmon, 93 F2d 1106, 1110 (10th Cir. 1991).

## I.    STANDARD OF REVIEW

Summary judgment will be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, however, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of his Second Amended Complaint. Id.

"Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). While the court may consider affidavits at the summary judgment stage, "the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; *conclusory and self-serving affidavits are not sufficient*." Hall, 935 F.2d at 1111 (emphasis added). The court disregards "inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form." Argo v.

Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1199 (10th Cir. 2006) (emphasis in original).

"A movant is not always required to come forward with affidavits or other evidence to obtain summary judgment; once the movant points out an absence of proof on an essential element of the nonmovant's case, the burden shifts to the nonmovant to provide evidence to the contrary." Hall, 935 F.2d at 1111, n. 5. Additionally, "the court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

*Qualified Immunity*

When a defendant raises a qualified immunity defense in response to a motion to dismiss or a motion for summary judgment,[4] the burden shifts to the plaintiff and the court employs a two-part test. Morris v. Noe, 672 F.3d 1185, 1191 (10th Cir. 2012); Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011). A plaintiff must show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's alleged misconduct.[5] Id. A plaintiff must establish both prongs to defeat a qualified immunity defense. Id. The court has discretion to decide which of the two prongs to address first in light of the circumstances of the case. Brown, 662 F.3d at 1164. Only if a plaintiff first meets this two-part test does the defendant bear the traditional summary judgment burden to show that there are no genuine disputes of material fact and that he or she is entitled to summary judgment as a matter of law. Kock v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011).

---

[4]     "The legally relevant factors for a qualified immunity decision will be different at the summary judgment state – no longer can the plaintiffs rest on facts as alleged in the pleadings." Stonecipher v. Valles, 759 F.3d 1134, 1148, n.9 (10th Cir. 2014).

[5]     The court is not to "define clearly established law at a high level of generality." City and Cnty. of San Francisco, Calif. v. Sheehan, 135 S.Ct. 1765, 1775-76 (2015).

## II.  UNDISPUTED MATERIAL FACTS[6]

*The Parties*

- Plaintiff is an elderly man of slight build.

- At the time of the incident giving rise to this litigation, Kay Lang was the mayor of the Town of Boynton.

- Both Candace Lang and Willie Hopkins were hired by previous mayors, not by Kay Lang.

- Candace Lang was hired as a volunteer assistant city clerk in April of 2014 and approved by the city council in July of 2014.  She was terminated from her position as clerk in July of 2016 following a finding of "financial discrepancies."

- Willie Hopkins was hired as the Town's water maintenance person in 2014.  Kay Lang was a board member when Willie Hopkins was hired and recalls that his hiring was approved unanimously.  Kay Lang was not aware of any disciplinary action taken against Willie Hopkins for any misbehavior as the Town's water maintenance person while she was mayor.  After the March 14, 2016 incident with Plaintiff, Willie Hopkins either resigned or was terminated from his position.[7]

---

[6]     The court notes that Plaintiff failed to comply with Local Civil Rule 56.1, which requires that a response brief in opposition to a motion for summary judgment "begin with a section responding, *by correspondingly numbered paragraph*, to the facts that the movant contends are not in dispute and shall state any fact that is disputed."  LCvR 56.1(c) (emphasis in original). Instead, Plaintiff begins with facts he deems undisputed.
        The court further notes that many of Plaintiff's proposed undisputed facts are not material as required by LCvR 56.1(c) and/or are supported only by conclusory allegations and inadmissible hearsay statements contained in his own affidavit.  The court disregards each of those proposed "facts," as they do not create an issue of fact and are insufficient to oppose summary judgment.

[7]     According to Kay Lang, Willie Hopkins resigned.  Docket No. 120, Exh 10, @ 8. Plaintiff avers he has been present when both Willie Hopkins and Candace Lang said that Kay Lang fired Willie Hopkins in retaliation for not giving her a "kick back."  Docket No. 128, Exh.

- Kay Lang is Candace Lang's stepmother. Candace Lang and Willie Hopkins have a close relationship, including a child together.

***The March 14, 2016 Incident***

- On March 9, 2016, Plaintiff requested records from the Town of Boynton. Plaintiff spoke with Candace Lang about his request that day. Plaintiff avers that she was hostile towards his request.

- On March 14, 2016, at about 3:00 p.m., Kay Lang called Plaintiff to let him know the records were available and that he could pick them up from her house. He declined because he was not feeling well.

- Later in the afternoon on March 14, 2016, Kay Lang called Plaintiff and told him she would be at City Hall around 6:00 p.m. if he wanted to pick up the records at that time. Plaintiff declined because he still was not feeling well.

- Plaintiff called Kay Lang later that day and agreed to meet her at City Hall at 6:00 p.m.

- Candace Lang testified that on the afternoon of March 14, 2016, after returning from errands in Tulsa, she and Willie Hopkins stopped by Kay Lang's home. Additionally, a text message shows Kay Lang directing Candace Lang to call her that afternoon.

- At City Hall, Plaintiff was met by Kay Lang and Eloise Greer, a Town council member.

- Kay Lang handed Plaintiff a brown envelope, ostensibly containing the results of his records request.

- Plaintiff opened the envelope, quickly thumbed through it, and then told Kay Lang that the contents of the envelope were not what he wanted and that he was going home.

---

1, @ 9-10. In any event, shortly after the March 14, 2016 incident, Willie Hopkins was no longer employed by the Town.

- Eloise Green requested he note his refusal of the documents on the front of the envelope. Plaintiff refused to sign the envelope and said he was going home.

- At some point, Willie Hopkins entered the room and accused Plaintiff of having a gun, which Plaintiff denied. Plaintiff lifted his shirt and emptied his pockets to show he did not have a gun. Kay Lang did not tell Plaintiff to do this. There is no evidence that anyone told Plaintiff to do this.

- Plaintiff testified that he backed up into the middle of the room when Willie Hopkins warned him not to come forward any further and that Willie Hopkins followed him as he backed up and punched him in his left eye. Plaintiff avers that afterwards, Candace Lang forced a chair under him and pushed him towards the front door. Plaintiff avers that the physical contact by Willie Hopkins and Candace Lang left him with a fracture of his eye socket and serious injuries to his head, back and neck. Plaintiff avers that Kay Lang took a video of the incident.

- After the incident, Plaintiff used his cell phone to call the Sheriff and left City Hall under his own power.

- After giving his statement to police, Plaintiff was driven to the hospital by Ronald Ray, who testified that he had to coerce Plaintiff to go because he did not want medical treatment.

- Plaintiff testified that Kay Lang never said anything negative to him, threatened him, or physically touched him in any way at any time. Plaintiff testified that the only person who made physical contact with him other than Willie Hopkins was Candace Lang "with the chair."

- Plaintiff testified that Kay Lang did not force him to go to City Hall or prevent him from leaving City Hall.

- Candace Lang testified that Kay Lang never contacted her to arrange an assault on Plaintiff and that Kay Lang said she would have Eloise Greer accompany her when Plaintiff came to pick up the records on March 14, 2016. Candace Lang further testified that she was not present in City Hall on March 14, 2016 during the incident giving rise to this litigation.

- Willie Hopkins avers that Kay Lang never contacted him to meet her at City Hall on March 14, 2016, to assault and/or batter Plaintiff in any manner, to restrict Plaintiff's movement in any way, or to arrest Plaintiff.

- Kay Lang avers that she never conspired with Willie Hopkins and/or Candace Lang to ambush, assault, batter, or retaliate against Plaintiff or to prevent him from leaving City Hall.

*Emotional Distress following March 14, 2016*

- Plaintiff avers that he is terrified to go to City Hall or other places where he might be isolated with Defendants.

- Plaintiff's wife testified that he has not sought counseling, taken medication or been diagnosed with depression or anxiety as a result of the incident. Plaintiff's son testified that his dad never told him he was making emotional distress claims and that he does not know if his dad has sought counseling.

*Records Request*

- In his April 29, 2016 records request, which is the subject of his Oklahoma Open Records Act cause of action, Plaintiff requested the following documents, most from January 1,

2015 to April 29, 2016: any sound and video recordings, including of the meeting between Plaintiff and the individual Defendants on March 14, 2016; copies of contracts and other documents showing any financial arrangement between the city and Leonard Lang;[8] documents showing payments to Candace Lang; certain phone bills and records; city council meeting minutes; bank statements; election notices and ballots; proof of liability insurance; and tax records.

- On July 28, 2017, sound recordings identified by Kay Lang were made available to all counsel for all parties and Candace Lang, *pro se*.

- Kay Lang avers that she does not know of any items responsive to Plaintiff's requests for video recordings, contracts with Leonard Lang, or election notices and ballots. She also avers that she has provided Plaintiff with all documents in her possession that were responsive to his records request.

- Plaintiff avers that he was denied access to the records he requested.

## III. FEDERAL CLAIMS

Plaintiff brings claims against all Defendants pursuant to 42 U.S.C. § 1983[9] for alleged violations of his First and Fourth Amendments. He alleges they violated his First Amendment

---

[8]   Leonard Lang is Kay Lang's husband and Candace Lang's father.

[9]   In his Second Amended Complaint, Plaintiff states that his "claims are actionable under Section 1983 because they seek relief for violations of Plaintiff's rights under the First and Fourth Amendments to the United States Constitution, and under Okla. Const. Art. 2, §§ 1, 3, 22, 26, 30." Docket No. 66, at 4. The court is confident Plaintiff meant that he had a claim under the Oklahoma Constitution as well as under § 1983, not that the two were somehow intertwined. In any event, Plaintiff did not respond to Defendants' motion for summary judgment as to any claim based on the Oklahoma Constitution. As noted by Defendants, "the Oklahoma legislature has not enacted a statutory mechanism to allow injured parties to bring claims for violations of their constitutional rights." Poff v. Oklahoma Dept. of Human Srvcs., No. CIV-15-936-R, 2017 WL 2468978, at *2 (W.D. Okla. June 7, 2017) (citations omitted). Additionally, this court

rights by retaliating against him for his records requests. He alleges they violated his Fourth Amendment rights by using unreasonable force against him and wrongfully arresting him.

**First Amendment**

Plaintiff argues that he was retaliated against for exercising his First Amendment rights. To recover on his First Amendment retaliation claim, Plaintiff must establish that: (1) he was engaged in constitutionally protected activity, (2) the Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the Defendant's actions were substantially motivated as response to his constitutionally protected conduct. Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000). This claim fails on the first prong. The First Amendment does not compel private persons or governments to supply information. Shero v. City of Grove, Okla., 510 F.3d 1196, 1201 (10th Cir. 2007). Plaintiff has no constitutionally recognized right to records from the Town, only a state right under the Oklahoma Open Records Act. Id. at 1202. The summary judgment motions are granted as to this claim.

**Fourth Amendment**

Plaintiff brings his Fourth Amendment claims against Defendants for unreasonable force and wrongful arrest. As an initial matter, there is no evidence of an arrest, lawful or otherwise. According to the undisputed material facts, Willie Hopkins, the Town's water maintenance person, rushed in and said Plaintiff had a gun. Plaintiff voluntarily showed that he did not have a gun. Willie Hopkins then came toward Plaintiff and punched him. Plaintiff avers that Candace

---

previously dismissed any claim pursuant to Bosh v. Cherokee Cty. Bldg. Augt., 305 P.3d 994, 1001 (Okla. 2013). Nevertheless, as Defendants suggest, the court declines to exercise supplemental jurisdiction over any remaining state constitutional claim.

Wallace, a city clerk, then pushed him toward the door in a chair.  Plaintiff called the Sheriff and left City Hall under his own power.  Plaintiff was never arrested.

### *Excessive Force Claim against the Town*

A municipality may not be held liable under § 1983 solely because its employees inflict an injury on a plaintiff.  Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).  "'Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged.'"  Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010).

In this case, Plaintiff was punched by a water maintenance person and possibly pushed in a chair by a city clerk.  The mayor of the Town was present and possibly recorded the incident, but never said anything negative to Plaintiff, threatened him, or physically touched him in any way at any time.  Plaintiff has not shown any policy or custom of the Town of Boynton to endow its water maintenance people, its city clerks, or even its mayor with policing powers.  He has shown no evidence of any policy or custom of the Town of Boynton that is directly linked to the injury he suffered.  The Town's motion for summary judgment is granted as to this claim.

### *Excessive Force Claim against the Individual Defendants*

Kay Lang and Willie Hopkins have raised the defense of qualified immunity.  As Candace Lang is *pro se*, the court will make the qualified immunity determination as to her as well.  The burden then is on Plaintiff to show whether the individual Defendants violated a constitutional right and whether the constitutional right was clearly established.  As the Supreme Court has directed, the court does not "define clearly established law at a high level of generality."  Sheehan, 135 S.Ct. at 1775-76.  "Qualified immunity is no immunity at all if

10

'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." Id. at 1776.

To prevail on a claim of excessive force under § 1983, a plaintiff must establish that a defendant acting under color of state law "seized" him. Arnold v. Curtis, 359 Fed.Appx. 43, 47 (10th Cir. 2009). "Seizure" means a "governmental termination of freedom of movement through means intentionally applied." Id. Such a claim generally involves a police or prison officer, and the "ultimate question 'is whether the officers' actions are objectionably reasonable in light of the facts and circumstances confronting them.'" Cavanaugh v. Woods Cross City, 625 F.3d 661, 664 (10th Cir. 2010) (citation omitted).

In this case, as the court stated above, Plaintiff was punched by a water maintenance person and possibly pushed in a chair by a city clerk. The mayor of the Town was present and possibly recorded the incident, but never said anything negative to Plaintiff, threatened him, or physically touched him in any way at any time. Most importantly, Plaintiff has shown no policy or custom of the Town of Boynton to endow its water maintenance people, its city clerks, or its mayor with policing powers. Thus, when Willie Hopkins punched Plaintiff and if Candace Lang pushed him, they were not acting under color of state law. Plaintiff has no constitutional right against being punched or pushed by a civilian with no police powers. He certainly has no such clearly established right. The individual Defendants are entitled to qualified immunity. The individual Defendants' motions for summary judgment are granted as to this claim.

IV.   STATE LAW CLAIMS

As noted above, the court declines to exercise jurisdiction over any remaining state constitutional claim. Plaintiff has also brought state claims for assault and battery; civil

11

conspiracy; intentional infliction of emotional distress; negligent hiring, supervision, and retention; and violations of the Oklahoma Open Records Act. As the federal claims have been dismissed, the court declines to exercise supplemental jurisdiction over these state law claims.

"Section 1367(c) provides conditions where district courts may decline to exercise supplemental jurisdiction, and the Supreme Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004) (citations omitted). The Tenth Circuit has stated, "[w]hen all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)) (emphasis added). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

The court has considered the factors in 28 U.S.C. § 1367(c).[10] As Defendants point out, Plaintiff's state constitutional claims may raise issues of novel or complex state law. Additionally, the numerous state law claims substantially predominated over the federal claims, which have now been dismissed. The court has also considered and weighed the values of judicial economy, convenience, fairness, and comity. Carnegie-Mellon University v. Cohill, 484

---

[10]     (1) the claim raises a novel or complex issue of State law,
         (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
         (3) the district court has dismissed all claims over which it has original jurisdiction, or
         (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C.A. § 1367.

U.S. 343, 350 (1988).  The balance of these factors indicates this case belongs in state court; thus the court declines to exercise jurisdiction over the remaining state law claims.

V.      **CONCLUSION**

For the reasons stated above, the motions for summary judgment [Docket No. 110, 120, 122 and 123] are GRANTED as to the federal claims.  The court dismisses without prejudice the remaining state law claims.  The motions for summary judgment, therefore, are moot as to the state law claims.  As noted above, Willie Hopkins' request to withdraw Docket No. 121 [Docket No. 124] is granted.  The remaining motions [Docket Nos. 133, 134, 135, and 136] are also moot.

      **IT IS SO ORDERED** this 19th day of September, 2017.

_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**